ESTATE OF PHYLLIS REYNOLDS WOODEN, BY AND THROUGH ITS EXECUTRIX, ANDREA WOODEN JONES, PLAINTIFF v. HILLCREST CONVALESCENT CENTER, INC. AND DUKE UNIVERSITY HEALTH SYSTEM, INC. INDIVIDUALLY AND D/B/A DUKE UNIVERSITY MEDICAL CENTER, DEFENDANTS

No. COA12-216

(Filed 21 August 2012)

**1. Appeal and Error—Rule 9(j)—no written findings and conclusions—no appellate review**

In a wrongful death action alleging medical malpractice, the trial court's failure to make written findings and conclusions when dismissing plaintiff's complaint pursuant to N.C.G.S. § 1A-1, Rule 9(j) meant that there could be no appellate review of the basis for the trial court's ruling.

**2. Medical Malpractice—Rule 9(j)—area of expert expertise**

In a wrongful death action arising from alleged medical malpractice that was remanded on other grounds, the inadequacy of plaintiff's expert nursing witness on claims against non-nursing healthcare professionals could not have properly served as a basis for the trial court's decision to dismiss the complaint pursuant to N.C.G.S. § 1A-1, Rule 9(j).

**3. Medical Malpractice—Rule 9(j)—partial dismissal of complaint**

N.C.G.S. § 1A-1, Rule 9(j) allows for partial dismissal of a complaint alleging medical malpractice. That Rule does not provide a procedural mechanism by which a defendant may file a motion to dismiss, and each of the procedural mechanisms provided by the Rules of Civil Procedure permits judgment on less than the entire complaint.

**4. Medical Malpractice—extension of time—physician's willingness to testify**

In a medical malpractice case remanded on other grounds, defendants' assertion that an extension of time was void because it was requested for an improper purpose was not supported by precedent concerning an expert's willingness to testify where no affidavits were included in the record.

**5. Medical Malpractice—extension of time—timing of expert opinion**

The trial court did not abuse its discretion in a medical malpractice case by allowing defendants to amend their answers after they learned that plaintiff's expert rendered a Rule 9(j) opinion before plaintiff's request for an extension of the statute of limitations.

Appeal by Plaintiff from orders entered 28 July 2011, 12 August 2011, and 24 August 2011 by Judge Orlando F. Hudson, Jr. in Durham County Superior Court. Heard in the Court of Appeals 5 June 2012.

*Wait Law, P.L.L.C., by John L. Wait, for Plaintiff-appellant.*

*Brown, Crump, Vanore & Tierney, L.L.P., by Andrew A. Vanore, III and W. John Cathcart, Jr., for Defendant-appellee Hillcrest Convalescent Center, Inc.*

*McGuireWoods LLP, by Mark E. Anderson, Heather R. Wilson, and Monica E. Webb, for Defendant-appellee Duke University Health System, Inc. d/b/a Duke University Medical System.*

HUNTER, JR., Robert N., Judge.

This is a wrongful death action alleging medical malpractice. Andrea Wooden Jones, executrix of Phyllis Reynolds Wooden's estate, ("Plaintiff") filed this action during a 120-day extension of the applicable statute of limitations for filing a medical malpractice action in North Carolina. Rule 9(j) of the North Carolina Rules of Civil Procedure establishes a heightened pleading requirement for medical malpractice actions and affords a plaintiff the opportunity to extend the statute of limitations to provide additional time to comply with the Rule. Plaintiff appeals from the trial court's orders dismissing the case with prejudice, denying Plaintiff's motions for findings of fact and conclusions of law, and granting both the defendants' motions to

amend their answers to add a limitations defense. We affirm in part, vacate in part, and remand to the trial court for further proceedings consistent with this opinion.

This result is dictated by our Supreme Court's recent opinion in *Moore v. Proper*, ____ N.C. ____, 726 S.E.2d 812 (2012), which requires trial courts in dismissing complaints under Rule 9(j) to make findings of fact and conclusions of law. *Id.* at ____, 726 S.E.2d at ____. We realize that at the time the trial court's decision was reached and this appeal was argued, neither the parties nor the trial judge had the benefit of this decision.

## I.  Factual & Procedural Background

In May 2008, Phyllis Reynolds Wooden was diagnosed with thoracic myelopathy, a disc herniation with spinal cord compression. Ms. Wooden elected to undergo surgery to correct this problem, and a physician from Defendant Duke University Health System, Inc. ("Duke") performed the surgery on 27 June 2008. On 30 June 2008, Ms. Wooden was released for home recovery, but was readmitted to Duke ten days after her surgery with an elevated white blood cell count, a sign of a post-operative infection. Ms. Wooden then underwent a second surgery to reopen, irrigate, and debride the wound from the previous surgery. Ms. Wooden was prescribed a six-week course of antibiotics and rehabilitative physical therapy and was subsequently transferred to and placed in the care of Defendant Hillcrest Convalescent Center, Inc. ("Hillcrest"). It was anticipated that the staff at Hillcrest would be able to closely monitor Ms. Wooden for signs of further infection.

Ms. Wooden complained of nausea and diarrhea soon after her arrival at Hillcrest. As these symptoms persisted, Ms. Wooden developed additional symptoms indicative of dehydration. For example, her skin became swollen and fragile, with multiple areas of dark pigmentation on her arms, and her legs swelled with fluid, a condition known as edema. Ms. Wooden's strength waned, and she had difficulty completing her physical therapy sessions. Aside from her physical therapy sessions, Ms. Wooden spent most of her time in bed, ultimately resulting in a back ulcer. Ms. Wooden left Hillcrest on 3 August 2008 when her daughter placed an emergency call to Duke because Ms. Wooden was having difficulty breathing. Ms. Wooden was transported to Duke's emergency department, where she was admitted and diagnosed with a pulmonary embolism, a condition known to result from dehydration.

**ESTATE OF WOODEN v. HILLCREST CONVALESCENT CTR.**

[222 N.C. App. 396 (2012)]

Ms. Wooden's health continued to decline. One day after being admitted at Duke, an ultrasound revealed that she had developed gallstones. Six days later, the staff noted that Ms. Wooden's urine was orange, a sign of jaundice and dehydration. Ms. Wooden had difficulty eating, but she nevertheless gained forty pounds as a result of the edema. She grew increasingly weak and began suffering from hearing loss. On 26 August 2008, Duke's wound care team determined that Ms. Wooden was too malnourished to undergo additional surgery to treat her infected wound. As of 31 August 2008, Ms. Wooden had suffered a massive pulmonary embolism, acute renal failure, anasarca (generalized edema), a surgical wound infection, and physical deconditioning. By 11 September 2008, the surgical hardware that had been placed in Ms. Wooden's back was visible (due to her emaciation), and she was noticeably jaundiced. Ms. Wooden was transferred to hospice care on 16 September 2008. On 27 September 2008, she received morphine to relieve her pain and fell into a comatose state. Ms. Wooden passed away on the morning of 30 September 2008.

Plaintiff's original counsel was retained to represent the estate in the middle of August 2010. On 17 September 2010, Plaintiff moved for a 120-day extension of the statute of limitations to file a medical malpractice action pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure. Absent this extension, the statute of limitations on Plaintiff's claim would have run on 30 September 2010, two years after Ms. Wooden's death. *See* N.C. Gen. Stat. § 1-53(4) (2011). In support of her motion for an extension, Plaintiff's counsel represented that the additional time would permit her to gather all relevant medical records; to locate experts willing to testify to Defendants' alleged medical negligence; and to provide such experts with adequate time to complete their reviews of the medical records. In sum, Plaintiff asserted that the extension would allow Plaintiff time to comply with the requirements of Rule 9(j) when bringing her complaint. Judge James E. Hardin, Jr. granted Plaintiff's extension by order entered on 17 September 2010, effectively extending the statute of limitations on Plaintiff's claim through 28 January 2011.

Plaintiff filed her complaint on 25 January 2011, after the original statute of limitations would have expired but prior to expiration of the 120-day extension. Plaintiff's complaint named Duke and Hillcrest (collectively, "Defendants") as defendants and set forth the requisite Rule 9(j) certification. Plaintiff's complaint set forth broad allegations of negligence against a range of healthcare professionals employed by each defendant. Defendants filed their answers on 18

April 2011, denying all allegations of liability. That same day, Duke served Plaintiff with interrogatories pursuant to Rule 9(j).[1] Duke's interrogatories asked Plaintiff to identify its Rule 9(j) expert(s), the date on which Plaintiff first contacted each expert, and the date on which each expert first rendered an opinion that Defendants had breached the applicable standard of care. Plaintiff responded that it had first contacted Dr. Frances Eason ("Dr. Eason"), its sole Rule 9(j) expert witness, in July 2010 and that Dr. Eason first rendered her opinion in August 2010. At the time the complaint was filed, Dr. Eason was a professor of adult health nursing at East Carolina University and a North Carolina-licensed registered nurse.

Defendants, noticing that Dr. Eason had rendered an opinion prior to Plaintiff's request for an extension of the statute of limitations, filed motions to dismiss and to amend their answers to raise the applicable statute of limitations as a defense to Plaintiff's claims and filed motions to dismiss on this new basis. In addition, Duke also asserted that Plaintiff's counsel could not have reasonably expected Dr. Eason, a nursing expert, to qualify as an expert witness to render an opinion on the professional standards of care regarding physicians.

On 11 July 2011, Defendants' motions to amend and motions to dismiss came on for hearing in Durham County Superior Court, Judge Orlando F. Hudson, Jr. presiding. The trial court granted Defendants' motions to amend and motions to dismiss in open court, effectively dismissing the case in its entirety. On 27 July 2011, before the trial court had entered its judgment, Plaintiff filed a motion requesting the court to include in its order findings of fact and conclusions of law. Plaintiff included in this motion a draft motion for the court containing proposed findings of fact and conclusions of law, which the court did not adopt. On 28 July 2011, the trial court entered its order dismissing the case without making specific findings of fact or conclusions of law. An order denying Plaintiff's motion for findings of fact and conclusions of law was filed on 24 August 2011. Plaintiff timely filed notices of appeal from the trial court's order of dismissal and order denying Plaintiff's motion for findings of fact and conclusions of law with this Court on 24 August 2011.

## II. Jurisdiction

Jurisdiction over the 28 July 2011 order dismissing the complaint and the 24 August 2011 order denying Plaintiff's motion for findings

---

1. Rule 9(j) affords a medical malpractice defendant ten interrogatory questions in addition to the general discovery interrogatory limit in order to verify the plaintiff's 9(j) certification. *See* N.C. Gen. Stat. § 1A-1, Rule 9(j) (2011).

of facts and conclusions of law lies in this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2011), as Plaintiff appeals from final orders of the superior court as a matter of right. Jurisdiction over Plaintiff's appeal from the trial court's 21 September 2011 order granting Defendants' motions to amend lies in this Court pursuant to N.C. R. App. P. 21(a)(1), as this Court granted Plaintiff's petition for writ of certiorari to review that order by order entered 5 June 2012.

## III. Analysis

[1] Rule 9(j) of the North Carolina Rules of Civil Procedure dictates the pleading requirements for bringing a medical malpractice action. "Rule 9(j) serves as a gatekeeper, enacted by the legislature, to prevent frivolous malpractice claims by requiring expert review *before* filing of the action." *Moore*, ____ N.C. at ____, 726 S.E.2d at ____. Rule 9(j) requires that a medical malpractice complaint meet one of the following three conditions at the time it is filed: (1) the claim has been reviewed by an expert reasonably expected to qualify under Rule 702 of the Rules of Evidence; (2) the claim has been reviewed by an expert that the plaintiff will move the court to qualify as an expert under Rule 702(e); or (3) the claim is based on the res ipsa loquitur doctrine. N.C. Gen. Stat. § 1A-1, Rule 9(j) (2009).[2] Rule 9(j)(1) applies in the instant case and requires the complaint to "specifically assert[] that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care." N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (2009). Rule 702 of the Rules of Evidence, in turn, provides:

> (b) In a medical malpractice action[,] . . . a person shall not give expert testimony on the appropriate standard of health care . . . unless the person is a licensed health care provider in this State or another state and meets the following criteria:
>
> . . . .
>
> (2) During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness

---

2. Rule 9(j) was amended subsequent to Plaintiff filing her complaint. *See* An Act to Reform the Laws Relating to Money Judgment Appeal Bonds, Bifurcation of Trials in Civil Cases, and Medical Liability, 2011 N.C. Sess. Laws 400. Effective 1 October 2011, both 9(j)(1) and 9(j)(2) require an expert to review not just the medical care but also "all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry." *Id.* We will refer to the version of Rule 9(j) applicable at the time Plaintiff's complaint was filed.

must have devoted a majority of his or her professional time to either or both of the following:

> a. The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, the active clinical practice of the same specialty or a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients; or

> b. The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

N.C. Gen. Stat. § 8C-1, Rule 702(b) (2011). Rule 9(j)'s requirements are strictly enforced, and a court must dismiss a complaint if it fails to meet the requirements. *Thigpen v. Ngo*, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002).

"To lessen the additional burden of this special procedure, the legislature permitted trial courts to extend the statute of limitations" on medical malpractice claims. *Brown v. Kindred Nursing Ctrs. E., L.L.C.*, 364 N.C. 76, 80, 692 S.E.2d 87, 89 (2010). In pertinent part, Rule 9(j) provides:

> Upon motion by the complainant prior to the expiration of the applicable statute of limitations, a resident judge of the superior court for a judicial district in which venue for the cause of action is appropriate under G.S. 1-82 or, if no resident judge for that judicial district is physically present in that judicial district, otherwise available, or able or willing to consider the motion, then any presiding judge of the superior court for that judicial district may allow a motion to extend the statute of limitations for a period not to exceed 120 days to file a complaint in a medical malpractice action in order to comply with this Rule, upon a determination that good cause exists for the granting of the motion and that the ends of justice would be served by an extension.

N.C. Gen. Stat. § 1A-1, Rule 9(j). "The extension of the statute of limitations is not automatic" but instead is left to the discretion of a

superior court judge. *Thigpen*, 355 N.C. at 202, 558 S.E.2d at 165. The superior court judge may grant an extension after determining " 'that good cause exists for the granting of the motion and that the ends of justice would be served by an extension.' " *Id.* (quoting Rule 9(j)). In addition, the trial court may allow a motion to extend only if the motion is made "in order to comply with" Rule 9(j). N.C. Gen. Stat. § 1A-1, Rule 9(j).

"[A] plaintiff's compliance with Rule 9(j) requirements clearly presents a question of law to be decided by a court, not a jury." *Phillips v. A Triangle Women's Health Clinic, Inc.*, 155 N.C. App. 372, 376, 573 S.E.2d 600, 603 (2002). Because it is a question of law, this Court reviews a complaint's compliance with Rule 9(j) *de novo*. *Id.* When ruling on a motion to dismiss pursuant to Rule 9(j), "a court must consider the facts relevant to Rule 9(j) and apply the law to them." *Id.* "[A] complaint facially valid under Rule 9(j) may be dismissed if subsequent discovery establishes that the certification is not supported by the facts, at least to the extent that the exercise of reasonable diligence would have led the party to the understanding that its expectation was unreasonable." *Moore*, ____ N.C. at ____, 726 S.E.2d at ____ (internal citations omitted). When a trial court determines a Rule 9(j) certification is not supported by the facts, "the court must make written findings of fact to allow a reviewing appellate court to determine whether those findings are supported by competent evidence, whether the conclusions of law are supported by those findings, and, in turn, whether those conclusions support the trial court's ultimate determination." *Id.* at ____, 726 S.E.2d at ____.

Plaintiff argues the trial court erred in dismissing its complaint. Defendants offer two arguments on appeal in an effort to justify the dismissal, both of which assert Plaintiff's failure to comply with Rule 9(j). Because the trial court did not specify its basis for dismissing Plaintiff's complaint in its 28 July 2011 order, we cannot evaluate the basis on which the court ruled; however, we can briefly address the arguments tendered by Defendants in the event that they are presented to the trial court on rehearing.

[2] Defendants first contend Plaintiff's complaint was properly dismissed because it presented claims against physicians and other non-nursing healthcare professionals, for which Plaintiff failed to offer a Rule 9(j) expert witness. The parties do not dispute that Dr. Eason was qualified as an expert witness to testify concerning the standard of care applicable to nursing-related claims; rather, the parties dis-

pute only whether the complaint presented claims against physicians and other non-nursing healthcare professionals who fall outside the purview of Dr. Eason's expertise. The trial court neglected to enter findings of fact and conclusions of law with respect to this issue, however; and, in the absence of such findings and conclusions, we conclude that this alleged failure to comply with Rule 9(j), *i.e.*, the inadequacy of Dr. Eason's testimony, could not properly have served as a basis for the trial court's decision to dismiss Plaintiff's complaint. Furthermore, as discussed below, we conclude that even if Plaintiff's complaint presented claims against non-nursing healthcare professionals, this fact alone would not necessarily justify the trial court's dismissal of the entire complaint.

**[3]** The question whether a medical malpractice complaint partially in compliance with Rule 9(j) should be dismissed in its entirety is one of first impression in North Carolina, and we therefore consider Rule 9(j) *in pari materi* with other Rules of Civil Procedure in an effort to harmonize Rule 9(j) with those Rules. *Brisson v. Kathy A. Santoriello, M.D., P.A.*, 351 N.C. 589, 595, 528 S.E.2d 568, 571 (2000). As this Court has previously noted, Rule 9(j) "does not provide a procedural mechanism by which a defendant may file a motion to dismiss a plaintiff's complaint." *Barringer v. Forsyth Cnty. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. 238, 255, 677 S.E.2d 465, 477 (2009). Instead, "[t]he Rules of Civil Procedure provide other methods by which a defendant may file a motion alleging a violation of Rule 9(j)." *Id.* (referencing Rules 12, 41 and 56 of the North Carolina Rules of Civil Procedure). A motion to dismiss under Rule 12(b)(6) allows for dismissal of less than all of a party's claims. *Morrow v. Kings Dep't Stores, Inc.*, 57 N.C. App. 13, 16, 290 S.E.2d 732, 734 (1982). Likewise, Rule 41 allows for partial dismissals, *see* N.C. Gen. Stat. § 1A-1, Rule 41 (allowing voluntary or involuntary dismissal of "an action or any claim therein"), and Rule 56 allows for partial summary judgments, *see* N.C. Gen. Stat. § 1A-1, Rule 56(a)-(b)(allowing the claimant or defending party to "move . . . for a summary judgment in his favor upon all or any part" of a claim). Thus, each of the procedural mechanisms through which Rule 9(j) is raised permits judgment on less than the entire complaint, and we accordingly conclude that Rule 9(j) allows for partial dismissal of a complaint alleging medical malpractice.

**[4]** We now turn to Defendants' second contention in support of the trial court's order dismissing Plaintiff's complaint. Defendants assert that Plaintiff requested an extension of the statute of limitations for

ESTATE OF WOODEN v. HILLCREST CONVALESCENT CTR.

[222 N.C. App. 396 (2012)]

an improper purpose and, consequently, the extension was voided such that Plaintiff filed its complaint after the (original) statute of limitations had expired. Specifically, Defendants insist that an extension was unnecessary in that Plaintiff's sole expert, Dr. Eason, was capable of satisfying Rule 9(j)'s requirements at the time Plaintiff requested the extension. In making this contention, Defendants rely on a footnote in a decision from this Court, which stated: "Although not raised as an issue by either party, we note this Court holds that Rule 9(j)'s 'willingness to testify' requirement is met when a medical expert opines during a telephone conversation that the applicable standard of care was breached." *Phillips*, 155 N.C. App. at 376 n.2, 573 S.E.2d at 603 n.2. Their reliance on this case is misplaced because under the facts of that case, the physician-witness tendered an affidavit to the court stating that he was "willing" to testify before the complaint was filed. *Id.* at 377, 573 S.E.2d at 603. Furthermore, in order for a trial court to void an extension of time, the court must indicate its basis—such as Rule 11's "improper purpose" provision. As no affidavits were included in the record on this issue, it is difficult to understand how Defendants could establish the factual predicate for Rule 11. Absent such findings or record evidence, we decline to presume that the trial court intended to void an order entered by another superior court judge to afford Plaintiff sufficient time to comply with Rule 9(j)'s requirements.

[5] Finally, we address Plaintiff's contention that the trial court erred in granting Defendants' motions to amend. A motion to amend made more than thirty days after a pleading has been served must be consented to by the opposing party or be permitted by the trial court. N.C. Gen. Stat. § 1A-1, Rule 15(a) (2011). A trial court's decision to allow a motion to amend "will not be reversed on appeal absent a showing of abuse of discretion." *Mauney v. Morris*, 316 N.C. 67, 72, 340 S.E.2d 397, 400 (1986). The party opposing a motion to amend has the burden to demonstrate that allowing the amendment would be prejudicial. *Id.* Here, Defendants learned through Plaintiff's responses to their Rule 9(j) interrogatories that Dr. Eason rendered an opinion prior to Plaintiff's request for an extension of the statute of limitations. In light of this new information, Defendants moved to amend their answers to assert the statute of limitations as a defense. We reject Plaintiff's argument that Defendants' assertion of a viable defense was futile whether or not the defense ultimately proves successful. Moreover, Plaintiff has failed to offer any argument as to how it was prejudiced by the amendments. We accordingly conclude that

the trial court did not abuse its discretion in allowing Defendants to amend their answers.

## IV. Conclusion

For the foregoing reasons, we affirm the trial court's 21 September 2011 order granting Defendants' motions to amend, and we vacate and remand the trial court's 28 July 2011 order for further proceedings consistent with this opinion. We leave to the trial court's discretion whether to allow the parties to present any additional evidence.

Affirmed in part; Vacated in part and remanded.

Chief Judge MARTIN and Judge ELMORE concur.